UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
FRANKLIN GOMEZ,

|  |  |
|---|---|
| Plaintiff, | **SECOND AMENDED COMPLAINT** |
| - against - | **JURY TRIAL DEMANDED** |
|  | 14-CIV-05932 (CM)(DCF) |

CITY OF NEW YORK,
DETECTIVE WILLIAM FISHER Shield # 006839

Defendants.
--------------------------------------------------------------------X

Plaintiff Franklin Gomez, by his attorneys, Ebanks & Sattler, LLP, in his Complaint (the "Complaint") herein against the City Of New York and Detective William Fisher of the NYPD's 114th Precinct in Astoria Boulevard, Queens, New York (collectively, the "Defendants"), allege as follows:

## INTRODUCTION

This case represents an egregious abuse of power by a New York City Detective intent on impressing a married woman at the expense of the civil rights and liberties of her estranged husband, the Plaintiff in this case, Franklin Gomez (hereinafter "Plaintiff" and/or "Mr. Gomez").

NYPD Detective William Fisher persecuted Mr. Gomez *for years,* from 2009 through 2012 with harassing encounters, arrests, false drug possession charges and physically abusing and seriously injuring Mr. Gomez, while simultaneously befriending his wife and going so far as to "friend" her on Facebook, just days before arresting Mr. Gomez.

Upon information and belief, starting in December 26, 2009, when Mr. Gomez had just arrived in New York from Florida and agreed to pass by his wife's apartment and wait downstairs to hand her money for Christmas gifts, Detective Fisher, at the time stationed at the 49th precinct in the Bronx, NY, arrested Mr. Gomez on unsupported charges of violating an order of protection against his wife. At the time of the arrest, Detective Fisher slammed Mr. Gomez's face against a wall breaking his nose and necessitating hospitalization at Bellevue Hospital. He also kept Mr. Gomez's passport and threatened with having him be deported.

Detective Fisher's arrest, described above, resulted in Mr. Gomez spending nearly six months at Riker's Island. After which he was handed over to immigration (ICE) where he was kept in detention for an additional 15 months.  All charges related to the December 26, 2009 arrest were eventually dismissed and sealed in June of 2010.

Upon information and belief, Mr. Gomez was eventually released from ICE after an immigration hearing that took place in the last week of August, 2011, where his estranged wife testified on his behalf and informed the judge that Mr. Gomez was not a threat to her or their children and that he provided the children financial and emotional support. The facts behind the order of protection were also explained. On or about August 30, 2011, after hearing and evaluating the evidence and testimony, the immigration judge saw fit to grant Mr. Gomez his permanent residency. After nearly two years in detention, at the end of 2011, Mr. Gomez was once again free and now a legal, permanent resident of the United States. He thought he could resume his life and enjoy his liberty, but it was short-lived.

Upon information and belief, Detective Fisher discovered that Mr. Gomez was free and with residency papers and threatened to have him deported. On or about April 22, 2012 Mr. Gomez was present at his wife's home when she received a call from Detective Fisher, which

she put on speakerphone, in which Detective threatened to pursue and Mr. Gomez heard

Detective Fisher threaten to pursue, arrest him and have him be deported. Fearing for his safety,

Mr. Gomez placed a compliant with the Civilian Complaint Review Board on April 25, 2012.

Just a few days later, on May 10, 2012, Mr. Gomez was arrested by Detective Fisher on

charges of criminal contempt and harassment and fabricated drug possession charges. Upon

information and belief, when Mr. Gomez refused to allow his fingerprints to be taken when he

found out he was being framed for drug possession charges, Detective Fisher escorted him in

handcuffs and struck him in the back of the head with such force that Mr. Gomez lost

consciousness and was hospitalized days later at Bronx Lebanon Hospital when he fainted as a

result of the trauma to the head suffered days earlier at the hands of Detective Fisher. He still

suffers from continual pain in his back and neck, which require ongoing therapy, medications

and even a neck brace.  The drug possession charges were almost immediately dismissed and,

after spending several days in jail Mr. Gomez was released after posting bail of $250. On

September 11, 2014, all charges related to this arrest were dismissed and sealed.

Upon information and belief, a few months after the May 10, 2012 arrest, on November

13, 2012, as Mr. Gomez entered the courtroom at a hearing to defend against the charges raised

in the May 10, 2012 arrest, he was detained at the entrance and arrested by Detective Fisher as

part of his ongoing persecution of him. This time on charges, inter alia, of violating an order of

protection, burglary, menacing, and criminal possession of a weapon. Bail was set at $20,000, an

amount Mr. Gomez could not afford to pay. As a result, Mr. Gomez spent 21 months in prison,

dismissing and fighting against court appointed attorneys who sought for him to plead guilty and

accept lesser charges. Something he would not do because he knew himself innocent.

Despite glaring inconsistencies in the police report and charges leading to the last arrest,

3

as well as the history between Mr. Gomez and Detective William Fisher, which included several complaints filed by Mr. Gomez against Detective Fisher with the Civilian Complaint Review Board (CCRB), the district attorney did not refrain from prosecuting the case. On August 15, 2104, following a jury trial, Mr. Gomez was found not guilty of all charges related to this last arrest.

## NATURE OF THE ACTION

1.  This is an action at law to redress the deprivation under color of statute, ordinance, regulation, custom, or usage, of rights, privileges, and immunities secured to the Plaintiff by the Fourth, Fifth, and Fourteenth Amendment to the Constitution of the of the United States, and by 42 U.S.C §1983 against the City of New York, and its agents at the New York Police Department that caused Plaintiff loss of freedom, significant financial loss, physical injury as well as emotional and mental distress.

2.  This is also an action to redress the pain and suffering and physical and psychological injuries sustained by Plaintiff as a result of intentional, malicious, careless, and negligent acts of the City of New York, and some of its police officers, specifically defendant Detective William Fisher.

## JURISDICTION AND VENUE

3.  This action arises under the Constitution and laws of the United States, including 42 U.S.C. § 1983. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. §1343(a). This Court may exercise supplemental jurisdiction over the claims based on New York law pursuant to 28 U.S.C. §1367.

4.  Venue is proper under 28 U.S.C. § 1391 in the Southern District of New York because the claims alleged herein arose there and, on information and belief, all parties hereto reside in

the District.

## PARTIES

### I.    The Plaintiff

5.   Plaintiff, Franklin Gomez, is a natural person, 51 years old, residing at 750 Riverside Drive, Apt 5F, New York, New York. He was a resident of New York City during all relevant times of this action.

### II.   The Defendants

6.   Defendant City of New York, is a corporate entity and may sue and be sued in its corporate name.

7.   Defendant Detective William Fisher, Shield # 006839, who is a natural person, and upon information and belief currently assigned to the 115th Precinct in Jackson Heights, Queens New York and a duly appointed Detective in the New York City Police Department, at all times relevant to the Complaint.

## FULFILLMENT OF ADMINISTRATIVE PREREQUISITES

8.    All conditions precedent for the filing of this action have been complied with: written Notices of Claim were served upon Defendant City of New York as to the May 10, 2012 arrest on or about December 3, 2014, and as to the November 13, 2012 arrest on or about November 23rd 2014, to the person designated by law as one to whom a summons against Defendant City of New York may be delivered in an action in the Supreme Court, and were given Claim Numbers, respectively, 2014PI034631 (5/10/12 arrest) and 2014PI034714 (11/13/12 arrest).

9.   At least 30 days have elapsed since the service of the Notice of Claim, and adjustment or payment of the Claim has been neglected or refused.

## FACTUAL ALLEGATIONS

### I.    Background

10. The specific allegations giving rise to this compliant concern Plaintiff's arrest and consequent incarceration on May 10, 2012 followed by its dismissal on September 11, 2014 and his arrest and incarceration on November 12, 2012, followed by his acquittal after a jury trial on August 15, 2014.  These arrests were part of a series of incidents involving abuse of power and police misconduct perpetrated by Detective William Fisher of the NYPD dating back to 2009, which, being germane to the case at bar, is detailed below

11. Plaintiff arrived in New York from Miami on December 20, 2009, seeking out his estranged wife, Ms. Yolandita Caba, and his children, Emeli Francesca Gomez and Sael E. Gomez, aged 8 and 7 years old, respectively. Although relations were tense with his wife, he was still allowed to see his children and was supporting them financially to the best of his ability. His wife agreed to allow a family member to bring the children to a McDonald's restaurant for them to spend time with their father and he would then drive all of them, including his wife, back to their apartment. They agreed that he would support them with money for Christmas gifts and some necessities for his wife.

12.  Upon information and belief, the following set of circumstances transpired on December 26, 2009. As Mr. Gomez was waiting near the entrance of his wife's apartment in the County of Bronx, New York, for his daughter to come down to hand her $500 he had collected for Christmas money, a police vehicle approached him and a plainclothes detective arrested him and took him to the 49th precinct in Eastchester Bronx, without informing him of the reason for his arrest or informing him of his rights.

13.  Upon arriving at the precinct this detective confronted him aggressively saying he was violating an order of protection with regards to his wife. When Mr. Gomez told him he was not and had been with her just recently and was waiting to hand his children Christmas money, the Detective became infuriated saying it was not true that Mr. Gomez had seen his wife. Mr. Gomez asked the arresting detective, William Fisher, why was he questioning him about his dealings with his wife and he did not understand the reason for his aggression and sudden arrest.

14.  At the 49th Precinct Mr. Gomez's passport was confiscated and, as he did not know the reason for his arrest, he questioned the fingerprinting process and refused to continue without an explanation. At which point Detective William Fisher took him to a hallway of the precinct and smashed his face against the wall.

15.  The next day, December 27, 2009, he was taken to Bellevue Hospital where he was told that he had a broken nose. Given that he was still processing his residency at the time, this arrest led to his incarceration for five months followed by 15 months on immigration hold. He was eventually granted his Residency on August 26, 2011 in large part due to his wife's testimony before the immigration judge in which she said that she and her children depended on him and testifying that he was not a threat to them. Mr. Gomez was finally released on August 30, 2011 after being held in detention for twenty months altogether. The charges for the initial arrest that led to this ordeal were eventually dismissed.

16.  This was Mr. Gomez's introduction to Detective William Fisher, and upon information and belief, during his time in detention, family members informed him that they had seen a man that seemed to look like a police officer, with a badge and gun in attendance at parties held by his wife's cousin, Elsa Moreira, and that he spoke to Ms. Caba on the phone

17.  Upon information and belief, after being released from immigration hold Mr. Gomez

7

went back to visiting his wife and often caring for the children. He even had a key for the apartment. On one of those occasions the phone rang and his wife put it on speakerphone and he overheard Detective Fisher say that if Mr. Gomez was out of prison already (Fisher) would create a case by which Mr. Gomez's residency would be taken away and he would be deported. Upon hearing this, Mr. Gomez filed a complaint with CCRB on April 25, 2012.

18. Upon information and belief, on May 6, 2012 Mr. Gomez was informed by his niece - who at the time was staying at his wife's apartment - that Detective Fisher had sent a friend request via Facebook to his wife, Ms. Yolandita Caba, which she had accepted. His niece printed a screen shot of the Facebook request and gave it to Mr. Gomez. Detective Fisher continues to be in Ms. Caba's circle of friends on Facebook in 2015.

19. Upon information and belief, a few days after the friend request on Facebook, on May 10, 2012, a little after midnight while coming out of his wife's apartment, with a key she had given him, Mr. Gomez was once again arrested by Detective Fisher. He was manhandled immediately, handcuffed and his head smashed against the door of the police car. Fearing for his life he screamed to be taken by another detective because he thought Detective Fisher had come to kill him in a rage of jealousy.

20. He was once again taken to the 49th precinct without being informed what he was being arrested for or without being read his rights. Barely sleeping because of the splitting headache resulting from the injury to his head earlier in the day, he was eventually taken to Jacobi Medical Center for an exam and medication before being taken to Criminal Court in Bronx County for processing.

21. Once in the court he was advised that he was being arrested for violating an order of protection (which he had never received) and for possession of drugs. The moment Mr. Gomez

discovered that he was being framed for drug possession he refused to allow Detective Fisher or any other officer to take his fingerprints asking to see a lawyer or a judge. Because of his refusal to be fingerprinted, Detective Fisher escorted him away from fingerprints to a holding cell and on the way there hit him from behind on his lower neck/upper back with such force that it knocked him unconscious. He awoke in a cell with a splitting headache and excruciating pain that continues to this day.

22.   The fabricated drug charges were almost immediately dismissed and he was processed on the charge of violating an order of protection. He was released on bail of $250 and was required to return to Court for ongoing hearings on his case. Upon information and belief, he would later find out that many of the orders of protection were produced allegedly at the prodding of Detective Fisher in hearings that he was not privy to.

23.   On November 13, 2012 as he entered Bronx Criminal Court for a scheduled hearing he was once again arrested. This time on charges of assaulting his wife and violating an order of protection. Because of the charges of violence this time, we presume, bail was set at $20,000, an amount he could not afford and thus began Mr. Gomez's next ordeal: 21 months in prison.

24.   Upon information and belief, during this time of incarceration, he was not informed of the Grand Jury proceedings by his Court appointed attorney, and therefore he was not able to participate. Mr. Gomez was desperate to tell his side of the story but was never allowed to do so. The Assistant District Attorney handling the case called his sister to tell her to convince Mr. Gomez to plead guilty. When his first attorney asked him to take a plea, Mr. Gomez fired him. And when his second court appointed attorney told him to accept a guilty plea he filed a complaint against her for making such a suggestion and sought to represent himself at trial. The judge denied his request for self representation and Mr. Gomez, no longer trusting his attorney,

protested by refusing to attend his own trial.

25. The trial took place over the course of several days and the facts were such that, despite his complete absence from the trial, the jury found him not guilty of all charges. On August 15, 2014 Mr. Gomez was set free and on September 11, 2014 all charges against him were officially dismissed.

26. While in jail Mr. Gomez filed a federal complaint that is the basis of this submission. However, he was released from jail on August 15, 2014 just days before the Court's Order of Service was mailed to him on September 2, 2014 advising him of the process for service.

27. Upon being released from prison, Mr. Gomez came out to a world in which he was older, weaker and in constant pain due to the physical abuse suffered at the hands of Detective Fisher. He could no longer work in construction as he had prior to his arrest. The physical and psychological trauma forced him to seek medical care. He has been in therapy for constant neck and back pain, most recently forced to wear a neck brace and he is undergoing psychological therapy as well. He has been unable to obtain steady work and now lives with his sister.

28.  The facts of this case are astounding in their demonstration of brashness and abuse by an "officer of the law." It is a nightmare scenario where a person with a Detective's shield uses it as a sword to injure the innocent time and again condemning an innocent person to nearly 4 years of detention simply to impress and possibly have a relationship with an attractive woman whose husband is in the way. It is the stuff of tabloids, Hollywood dirty cop movies and the nightmare of ordinary citizens.

# CAUSES OF ACTION

## FIRST CAUSE OF ACTION

### FALSE ARREST AND IMPRISONEMENT
42 U.S.C. §1983

29.  Plaintiff restates and realleges Paragraphs 1 through 28 as though fully set forth herein.

30.  On May 10, 2012 and November 13, 2012, defendants without just cause, negligently, wrongfully, willfully, maliciously and unreasonable seized the plaintiff herein and deprived him of his liberty. The defendants subjected the Plaintiff to unreasonable, unconscionable, unjustified and unprovoked seizure and detention. The defendants subjected plaintiff to false arrest and imprisonment, in violation of his rights guaranteed by the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. sec. 1983, and Article 1, sections 6, 11 and 12 of the New York State Constitution, and the Common Law of the State of New York.

31.  Upon information and belief, the actions were carried out and condoned by defendants CITY of NEW YORK its agents and employees, including DETECTIVE WILLIAM FISHER who was acting within the course and scope of his employment.

32.  Plaintiff was subjected to a violation and deprivation of his civil rights, permanent damage to his reputation and standing in the community, false arrest and imprisonment, and extreme mental, physical and emotional harm and distress at the hands of defendant Detective William Fisher.

33.  By reason of the foregoing plaintiff was deprived of his liberty and was subjected to ridicule, scorn, and derision by those knowing of his detention. Plaintiff has been caused to suffer from ongoing physical injuries and mental anguish. Plaintiff has incurred past and will incur future medical expenses, loss of earnings and earnings ability, and was otherwise injured in

an amount to be determined at trial.

## SECOND CAUSE OF ACTION

### REFUSING OR NEGLECTING TO PREVENT UNLAWFUL CONDUCT
42 U.S.C. §1983

34.  Plaintiff restates and realleges Paragraphs 1 through 33 as though fully set forth herein.

35. At all times relevant to this complaint Defendant Detective William Fisher of the NYPD

was acting under the direction and control of the New York City Police Department.

36. Acting under color of law and pursuant to official policy or custom, New York City

Police Department knowingly, recklessly, or with gross negligence failed to instruct, supervise,

control, and discipline on a continuing basis Defendant Detectives in their duties to refrain from:

> (a) unlawfully and maliciously harassing a citizen who was acting in accordance with his constitutional and statutory rights, privileges and immunities
> (b) unlawfully and maliciously arresting, imprisoning and prosecuting a citizen who was acting in accordance with his constitutional and statutory rights, privileges and immunities
> (c) conspiring to violate the rights, privileges and immunities guaranteed to Plaintiff by the Constitution and laws of the United States
> (d) otherwise depriving plaintiff of his constitutional and statutory rights, privileges, and immunities

37. As a direct and proximate cause of the negligent and intentional acts of Defendants as set

forth above, Plaintiff suffered physical injury, loss of income, and severe mental anguish in

connection with the deprivation of his constitutional and statutory rights guaranteed by the Fifth

and Fourteenth Amendments of the Constitution of the United States and protected by 42 USC

sec 1983.

## THIRD CAUSE OF ACTION

### MALICIOUS PROSECUTION
42 U.S.C. §1983

38.  Plaintiff restates and realleges Paragraphs 1 through 37 as though fully set forth herein.

39.  Defendants instituted criminal process against plaintiff on several occasions, following May 10 and November 13, 2012, with malice as the charges were not based on probable cause, that is, the state of the facts in the mind of the prosecutor would not lead a man of ordinary caution and prudence to believe, or entertain an honest or strong suspicion that Plaintiff was guilty.

40.  Defendant City of New York, through its prosecutorial representatives, had a duty to ascertain whether there was reasonable and probable cause for a prosecution, to wit, to ascertain the allegations of the Detective(s), seek out the background and history of Plaintiff and Defendant Fisher, including the complaint(s) filed with the CCRB and internal affairs as well as to question the veracity of charges that included fabricated drug possession and that were dismissed for lack of evidence, prior to proceeding to prosecute.

41.  The Court of Appeals of New York has stated "The essence of malicious prosecution is the perversion of proper legal procedures" <u>Broughton v State of New York</u>, 37 NY2d 451 (1975).

## FOURTH CAUSE OF ACTION

### UNREASONABLE AND EXCESSIVE FORCE
42 U.S.C. §1983

42.  Plaintiff repeats and realleges Paragraphs 1 through 41 as though fully set forth herein.

43.  On or about May 10, 2012, defendant Detective Fisher, acting under color of law, without probable cause, just cause, provocation or any just reason or any reason to believe that the Plaintiff was engaging in any criminal activity, assaulted and battered the plaintiff, and grossly assaulted, excessively assaulted, and committed aggravated assault against the plaintiff. The defendants, deprived plaintiff of his constitutional right to be free from excessive and

unreasonable force.

44.  By reason of the foregoing plaintiff has suffered personal injury, apprehension and fear, confinement, ongoing physical injuries and mental anguish, and has incurred medical and other expenses, past and future, loss of earnings and earnings ability, past and future, and has otherwise been damaged in an amount to be determined at trial.

## FIFTH CAUSE OF ACTION

## PENDENT CLAIM OF INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

45.  Plaintiff restates and realleges Paragraphs 1 through 44 as though fully set forth herein.

46. Defendants intentionally and deliberately inflicted emotional distress on Plaintiff by maliciously prosecuting him, or by abusing the lawful process by unlawful purpose, or by violating Plaintiff's constitutional rights, or by falsely arresting and imprisoning Plaintiff, in a way that they knew or should have known that emotional distress was the likely result of their conduct.

47. The actions of defendants were the cause of Plaintiff's distress. The emotional distress sustained by Plaintiff was and is severe and of a nature that no reasonable man could be expected to endure.

48.  As a result of Defendant's extreme and outrageous conduct, Plaintiff has suffered and will continue to suffer mental pain and anguish, severe emotional trauma, embarrassment, and humiliation.

## SIXTH CAUSE OF ACTION

## PENDENT CLAIM OF GROSS NEGLIGENCE AND NEGLIGENCE

49.  Plaintiff restates and realleges Paragraphs 1 through 48 as though fully set forth herein.

50. Defendant City of New York owed a duty to supervise or train the officers and to take

14

steps to prevent events such as occurred here, to wit, the false arrest and imprisonment and the swearing to charges without probable cause.

51.  Defendant Detectives and/or Police Officers owed a duty to act according to the standard of ordinary care of a Detective/Police Officers, to wit, to conduct themselves with honesty, integrity and professionalism, the failure of which was the proximate cause of Plaintiff's injuries.

52.  Defendant City of New York breached that duty by failing to adequately control and supervise the officers.

53.  As a result of those breaches, which were the proximate causes of Plaintiff's injuries, Plaintiff suffered harm and damages.

54.  Defendants City of New York is also liable under the doctrine of respondent superior.


## SEVENTH CAUSE OF ACTION

### PENDENT CLAIM OF NEGLIGENCT INFLICTION OF EMOTIONAL DISTRESS

55.  Plaintiff restates and realleges Paragraphs 1 through 54 as though fully set forth herein.

56.  Defendants negligently inflicted emotional distress on the Plaintiff.

57.  Defendants had a continuing affirmative duty to perform their professional services in such a manner as not to inflict distress on plaintiff.

58.  Defendants breached their duties to plaintiff.

59.  The Plaintiff never interfered with defendant's duties under the above described duties.

60.  Plaintiff is and, and with a high degree of likelihood, will continue to be inflicted with emotional distress due to the negligence of defendants.

61.  Defendant City of New York is also liable under the doctrine of respondent superior.

62.  As a result of the Defendants' negligent conduct, Plaintiff has suffered and will continue

to suffer pain, anguish, severe emotional trauma, embarrassment and humiliation.

## EIGHTH CAUSE OF ACTION
## PENDENT CLAIM FOR ASSAULT AND BATTERY

63.  Plaintiff restates and realleges Paragraphs 1 through 62 as though fully set forth herein.

64.  Defendants willfully caused the plaintiff physical apprehension, non-consensual harmful and hurtful contact, and physical harm. The aforementioned actions of the defendant constituted assault and battery.

65.  Said acts of Defendants were, willful, unjustified, unwarranted, unprovoked and unwanted and were motivated solely by the desire to ham the Plaintiff, without regards to the plaintiff's wellbeing. They were not for any lawful purpose.

66.  By reason of the foregoing plaintiff has suffered personal injury, apprehension and fear, confinement, ongoing physical injuries and mental anguish, and has incurred medical and other expenses, past and future, loss of earnings and earnings ability, past and future, and has otherwise been damaged in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
## PENDENT CLAIM OF FALSE ARREST AND FALSE IMPRISONEMENT

67.  Plaintiff restates and realleges Paragraphs 1 through 66 as though fully set forth herein.

68.  Defendants, without provocation, sufficient cause, or reason, subjected the plaintiff to an unlawful detention, arrest and imprisonment. The aforementioned actions of defendants on May 10 and November 13, 2012, constituted false arrest and false imprisonment.

69.  By reason of the foregoing plaintiff has suffered confinement, ongoing physical injuries and and mental anguish, and has been caused to incur medical and other expenses, loss of earnings and earnings ability, and has been damaged in an amount to be determined at trial.

16

**TENTH CAUSE OF ACTION**

**PENDENT CLAIM OF MALICIOUS PROSECUTION**

70.   Plaintiff restates and realleges Paragraphs 1 through 69 as though fully set forth herein.

71.   Defendants knew there was no basis for the institution and prosecution of criminal charges against the plaintiff on May 10, 2012 or on November 12, 2012. The aforementioned actions of the defendants constituted malicious prosecution.

72.   By reason of the foregoing plaintiff was deprived of his liberty and was subjected to ridicule, scorn, and derision by those knowing of his detention. Plaintiff has been caused to suffer from ongoing physical injuries and mental anguish. Plaintiff has incurred past and will incur future medical expenses, loss of earnings and earnings ability, and was otherwise injured in an amount to be determined at trial.

**ELEVENTH CAUSE OF ACTION**

**PENDENT CLAIM OF ABUSE OF PROCESS**

73.   Plaintiff restates and realleges Paragraphs 1 through 72 as though fully set forth herein.

74.   Defendants used their position of authority to institute and perpetuate false and misleading charges against plaintiff. The aforementioned actions of defendants constituted abuse of process.

75.   By reason of the foregoing plaintiff was deprived of his liberty and was subjected to ridicule, scorn, and derision by those knowing of his detention. Plaintiff has been caused to suffer from ongoing physical injuries and mental anguish. Plaintiff has incurred past and will incur future medical expenses, loss of earnings and earnings ability, and was otherwise injured in an amount to be determined at trial.

## SEVENTH CAUSE OF ACTION
### PENDENT CLAIM OF NEGLIGENT HIRING AND RETENTION

76.  Plaintiff restates and realleges Paragraphs 1 through 75 as though fully set forth herein.

77.  Defendants were negligent in the hiring and retention of Detective Fisher. The aforementioned actions of the defendants constitute negligent hiring and retention.

78.  By reason of the foregoing plaintiff was deprived of his liberty and was subjected to ridicule, scorn, and derision by those knowing of his detention. Plaintiff has been caused to suffer from ongoing physical injuries and mental anguish. Plaintiff has incurred past and will incur future medical expenses, loss of earnings and earnings ability, and was otherwise injured in an amount to be determined at trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays for judgment as follows:

79. Award Plaintiff compensatory damages in the amount of at least $10,000,000 to be determined by the court against the individual defendant and the City of New York, jointly and severally, together with interest and costs;

80. Award Plaintiff punitive damages in the amount of at least  $2,000,000 against the individual defendants, jointly and severally;

81. Award Plaintiff reasonable attorneys fees and costs as authorized under 42 U.S.C. §1988; and

82. Grant such other further and different relief as the Court deems just and proper.

**WHEREFORE**, Plaintiff demands judgment, including interest, jointly and severally against Defendants in an amount deemed by this Court to be just and fair and in any other way

18

that the Court deems appropriate.


Dated: New York, New York
       March 31, 2016

                              EBANKS & SATTLER, LLP


                       By: _____/s/_____
                            MARIO A. Vasquez
                            Of Counsel
                            Attorneys for Plaintiff
                            111 John Street, Suite 2509
                            New York, New York 10038
                            (646) 220-2426

Civil Action No.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FRANKLIN GOMEZ,                                     Purchased:

                               Plaintiff,          **SECOND AMENDED
                                                   COMPLAINT**

          - against -                              **JURY TRIAL
                                                   DEMANDED**

                                                   14-CIV-05932 (CM) (DCF)

CITY OF NEW YORK,
DETECTIVE WILLIAM FISHER, Shield # 006839

                               Defendants.

---

## SECOND AMENDED COMPLAINT

---

EBANKS & SATTLER, LLP
                          20 Vesey Street, Suite 503
                          New York, NY 10007
                          (212) 766-4411


*Dated:*_____          *Signed:*_____

---

*Service of a copy of the within*                          *is hereby admitted.*

*Dated:*_____          _____
                                          *Attorney(s) for*

---

20