UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/16/16
```

————————————————————————— x

FRANKLIN GOMEZ,

        Plaintiff,

        -against-

CITY OF NEW YORK et al.,

        Defendants.

————————————————————————— x

No. 14 Civ. 05932 (CM)

## DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT

McMahon, J.:

    Plaintiff, Franklin Gomez ("Gomez"), brings this action under 42 U.S.C. § 1983 against Defendants Detective William Fisher ("Fisher") and the City of New York (the "City"), alleging claims of malicious prosecution, excessive force, false arrest and imprisonment, and refusing or neglecting to prevent unlawful conduct. Gomez also asserts a number of related state claims.

    Defendants move to dismiss Gomez's first amended complaint pursuant to Fed. R. Civ. Pro. 12(b)(6), asserting that Gomez's claims are time-barred, either because the statute of limitations has run or because service was untimely. Gomez, who is represented by counsel, moves for leave to serve a second amended complaint, which was served after he responded to the motion to dismiss and without leave of court, in violation of the Federal Rules of Civil Procedure.

All the claims in the first amended complaint are barred by limitations except for Gomez's federal claim for malicious prosecution arising out of the criminal proceeding that commenced against him on or about May 11, 2012. That claim, too, must be dismissed, as it is apparent from the face of the pleading and the documents referenced therein that it fails to state a claim on which relief can be granted.

In a motion for leave to file a second amended complaint, Gomez seeks to plead new federal and state claims of false arrest and malicious prosecution, as well as a state law claim for abuse of process, arising out of a subsequent arrest, which occurred on or about November 13, 2012. That motion is granted but only to the extent of allowing him to assert a malicious prosecution claim pursuant to 28 U.S.C. §1983. It is otherwise denied because the rest of the claims Gomez seeks to assert, both state and federal, are time-barred, so amendment would be futile.

## BACKGROUND

It is helpful, prior to considering the merits of these motions, to create a timeline of the events that bring the parties before the court. These events are taken from the first amended complaint and the documents referenced in or fairly relied on in that pleading.

### The Events Underlying This Lawsuit

On May 10, 2012, Plaintiff Franklin Gomez was arrested by Defendant Detective Fisher on a domestic violence complaint filled out by Plaintiff's ex-wife Yolandita Caba. (Am. Compl. ¶ 11, at 4, Docket No. 15; NYPD Arrest Report, Docket No. 35). He was arrested while standing outside of or leaving Caba's residence. (Am. Compl. ¶ 19, at 6, Docket No. 15).

The five arrest reports submitted by Fisher following this arrest charged Gomez with criminal contempt, burglary, resisting arrest, criminal possession of controlled substance, and

two counts of criminal contempt, for violating two orders of protection – one from a New York court and one from a Florida court – that barred Gomez from coming within 500 feet of Caba's residence or have any contact with her. (*See* Injunction for Protection Against Domestic Violence, Case No. 08-212451204; New York Order of Protection, Order No. 2012-013653; NYPD 05/10/2012 Arrest Reports, all Docket No. 35). The arrest reports allege that Gomez had been calling Caba's phone throughout that night and then came to her residence and repeatedly rang her door buzzer. (NYPD 05/10/2012 Arrest Reports, Docket No. 35, Ex. C–G).

Caba had been complaining to the NYPD about Gomez since October 15, 2009. (*See* NYPD Arrest Reports, Docket No. 35). According to the amended complaint (which details all this history), Defendant Fisher had arrested Plaintiff on several previous occasions.

On May 11, 2012, Detective Fisher swore out a criminal complaint with Bronx County Criminal Court charging Gomez with a variety of offenses, including criminal contempt for violating the two orders of protection. (*See* Fisher's Crim. Compl., 2012BX027911, Docket No. 35, Ex. H). Gomez was initially at liberty following arraignment.

On November 13, 2012, when Gomez entered Bronx Criminal Court for a scheduled hearing regarding his criminal contempt charges, Fisher arrested him again for a new violation of the order of protection. (Am. Compl. ¶ 24, at 7–8, Docket No. 15; NYPD Arrest Reports, Docket No. 35 Ex. O, P). This time bail was set at $20,000, which Gomez could not post. He was, as a result, remanded to the George R. Vierno Center on Rikers Island, where he spent 21 months. (Am. Compl. ¶ 24, at 7–8, Docket No. 15).

**Lawsuit Commenced**

On July 8, 2014, while confined on Rikers Island, Plaintiff filed a *pro se* complaint in this court against the New York City Police Department ("NYPD") and a Detective "Fish"

3

(Detective William Fisher, the arresting officer), charging false arrest, false imprisonment, malicious prosecution and battery/excessive force – this last based on the claim that on May 10, 2012, Fisher punched Gomez in the face because Gomez refused to be fingerprinted at the Bronx Criminal Court. (Am. Compl. ¶¶ 20–23, at 6–7, Docket No. 15). Gomez's *pro se* complaint made no reference to his November 13, 2012 arrest.

On August 15, 2014, Gomez was released from Rikers.

On September 2, 2014, this court granted Gomez's application for *In Forma Pauperis* status, substituted the City of New York for the New York City Police Department (not a suable entity) as a defendant, and directed that Plaintiff request a summons within 30 days and serve the City and Defendant Fisher with process within 120 days, as required by Fed. R Civ. P. 4(m). (Docket No. 7). This order tolled the statute of limitations for 120 days. *Toliver v. County of Sullivan*, 841 F. 2d 41, 42 (2d Cir. 1988). Gomez never received this order, because he was no longer in Rikers at the time it was sent.

On September 11, 2014, all charges were dropped against Gomez. At this point, and not before, his claim(s) for malicious prosecution accrued. (Am. Compl. ¶ 25, at 8, Docket No. 15).

The docket sheet does not reflect that Plaintiff made any effort after his release to update his address with the Clerk of Court or to cause a summons to be issued or obtain a service packet from the Clerk's Office after his release. However, he did seek the services of counsel.

On or about December 31, 2014, the 120 day Rule 4(m) period ended, as did the toll of the limitations period. No request for additional time to serve process was made prior to that date. The plaintiff's failure either to serve within the 120 period or to obtain an extension of time to serve meant that the statute of limitations began to run on the 121 days after the suit was filed. *See Ocasio v. Fashion Institute of Technology,* 9 F. App'x. 66, 68–69 (2d Cir. 2001). It expired,

4

for all but one of plaintiff's federal claims, on September 7, 2015 (three years from the date of arrest plus 120 days for the *Toliver* toll). The exception is plaintiff's Section 1983 malicious prosecution claim, which will not be time-barred until September 11, 2017.

The statute of limitations for plaintiff's malicious prosecution claim under state law ran on September 11, 2015 -- before the Plaintiff filed his amended complaint.

### Plaintiff Retains Services of Counsel

On January 30, 2015, which was still well prior to the expiration of the limitations period, the law firm of Raskin & Kremins, LLP, filed a notice of appearance on Plaintiff's behalf. (Docket No. 8). At that time, the docket sheet in the case reflected that the court had signed an Order of Service many months earlier, but plainly indicated that no summons had been requested and no defendant had been served. Nonetheless, Raskin & Kremins made no effort to obtain a summons, to serve the summons and complaint, or to obtain a (retroactive) extension of the 120 period for service. It did schedule a Fed. R. Civ. Proc. 50(h) deposition with the City in connection with a different case brought by Plaintiff (apparently Raskin & Kremins appeared for Plaintiff in three separate lawsuits that he had commenced *pro se*); but when Plaintiff did not attend, Raskin & Kremins withdrew as counsel in all three actions, including this one. (P's Memo Opp'n Mot. Dismiss, at 8, Docket No. 41). By March 2015, Plaintiff understood that Raskin & Kremins would no longer be representing him. (*Id.* at 9).

On May 26, 2015 – still within the statute of limitations on all of plaintiff's federal claims, thanks to the *Toliver* toll – the law firm of Ebanks & Sattler, LLP, filed a Notice of Substitution of Counsel. (Docket No. 11).

Ebanks & Sattler apparently did not check the docket sheet when it filed its Notice of Substitution; had it done so, it would have learned that no summons had ever issued and that

5

service had not been effected. The firm did, however, undertake other tasks relating to the case over the summer months, and even sought an adjournment of a July 2015 pre-trial conference until September 11. (P's Memo Opp'n Mot. Dismiss, at 9, Docket No. 41).

On September 7, 2015, the statute of limitations ran on all of the federal claims asserted in the original complaint other than the federal malicious prosecution claim.

On or about September 10, 2015, a day before the scheduled conference on September 11, someone from Ebanks & Sattler called Corporation Counsel to see why no one had yet appeared in the action. (*Id.*). That was the City's first notice of the pendency of this action. (D's Memo Mot. Dismiss, at 14–15, Docket No. 36).

On September 11, 2015, the Rule 16 conference took place. At the conference, the Court was apprised of the failure to serve. The City was in no position to assess the significance of that failure – it had not yet seen the complaint – but the issue of timeliness loomed over the proceedings.

On September 18, 2015, Ebanks & Sattler finally asked the Clerk of Court to issue summonses for the City and Fisher. That same day, it filed the amended complaint that is the subject of the City's motion to dismiss, naming as defendants the City of New York, New York City Police Department[1] and Detective Fisher. (Am. Compl., Docket No. 15).

**The First Amended Complaint**

The amended complaint alleged the following federal causes of action under § 1983: (1) false arrest and imprisonment; (2) refusing or neglecting to prevent unlawful conduct; (3) malicious prosecution; and (4) excessive force. The complaint also alleged the following pendent state law claims: (1) intentional infliction of emotional distress; (2) gross negligence and negligence; (3) negligent infliction of emotional distress; (4) assault and battery; (5) false arrest

---

[1] Gomez concedes that all claims against NYPD must be dismissed. (P's Opp. Mot. Dismiss, at 4, Docket No. 41).

6

and false imprisonment; (6) malicious prosecution; (7) abuse of process; (8) negligent hiring and retention.

The amended complaint contained a great deal of detail about the alleged history between Gomez and Detective Fisher, including allegations that Fisher was involved otherwise than professionally with Caba, the person who had obtained the Orders of Protection. It provided a detailed account of the arrest of May 10, 2012, and described the force allegedly used on Gomez when he refused to be fingerprinted at the Bronx Criminal Court.

The amended complaint also recounted plaintiff's allegations about the November 2012 arrest, which led to Gomez's lengthy pre-trial incarceration on Rikers Island. But significantly, it did not assert any claims arising out of that arrest. To the contrary, the amended complaint explicitly states that November 13, 2012 arrest is "not the subject of this complaint," (Am. Compl. ¶ 24, at 7, Docket No. 15); and that "[t]he specific allegations giving rise to this complaint concern Plaintiff's arrest and consequent incarceration on May 10, 2012 followed by its dismissal on September 11, 2014." (*Id.* ¶ 11, at 4). It could thus not be more clear that plaintiff – represented by counsel – did not assert, in his first amended complaint, that he was falsely arrested on November 13, 2012, or that any ensuing prosecution arising out of that arrest (which, I gather, also ended on September 11, 2014 with the dismissal of any charge of a subsequent violation of the Orders of Protection) was maintained maliciously.

**Service and Miscellaneous Matters**

The City was finally served with process on September 28, 2015. (*See* Docket No. 24).

Detective Fisher was finally served, after numerous missteps, on October 6, 2015. (*See* Docket No. 27).

7

On November 13, 2015, the statute of limitations ran on federal claims arising out of the November 13, 2012 arrest, other than any claim for malicious prosecution. At that time, no claims arising out of that arrest had been asserted; as noted above, they had been expressly disclaimed.

**The Instant Motions**

On December 22, 2015, Defendants moved to dismiss Plaintiff's amended complaint pursuant to Fed. R. Civ. Pro. 12(b)(6) on several grounds, including that Plaintiff had failed to serve the pleading in accordance with Rule 4(m), and that claims were barred by the statute of limitations.

January 12, 2016 was the last day to file (or, because the complaint had already been amended once as of right, to seek leave to file) a further amendment to the amended complaint, in response to the Defendants' motion to dismiss. No such application was made.

On January 29, 2016, plaintiff's counsel responded to the Defendants' motion to dismiss on the merits, admitting that there had been a failure to serve but arguing that it was due to "excusable neglect," and had resulted in no prejudice to Defendants. (P's Opp. Mot. Dismiss, at 8–9, Docket No. 41).

On April 1, 2016, counsel for Gomez filed a second amended complaint without seeking the leave of court. The second amended complaint added claims for false arrest and malicious prosecution arising out of the November 13, 2012 arrest – the claims that plaintiff had expressly disclaimed in his first amended complaint. (Docket No. 49).

8

On April 4, 2016, the City sent a letter to the court formally protesting that no motion for leave to amend had been made. (Docket No. 50). On April 6, 2016, Plaintiff formally moved for leave to amend on April 6, 2016. (Docket No. 51).

On April 22, 2016 at the court's request, Defendants submitted another letter explaining how the amendment would prejudice them, which the court accepts as its opposition to the motion for leave to amend. (Docket No. 55).

Both the motion to dismiss the first amended complaint and the motion for leave to file the second amended complaint are ripe for disposition.

## DISCUSSION

### I.   Standard for Motion to Dismiss

When considering a motion to dismiss pursuant to Rule 12(b)(6), the court must accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Defenses based on statutes of limitations are properly brought under a motion to dismiss for failure to state a claim. *Francis v. Blaikie Group*, 372 F. Supp. 2d 741, 743 (S.D.N.Y. 2005).

### II.   The First Amended Complaint is Dismissed with Prejudice

The first amended complaint, which is the subject of the motion to dismiss, must be dismissed in its entirety. The city's motion is, therefore, granted.

### The Statute of Limitations Bars All But One of the Claims Asserted in the First Amended Complaint

#### (i)   *Time-Barred Federal Claims in the First Amended Complaint*

The statute of limitations begins to run when a claim accrues and creates a time limit within which a plaintiff must bring his claim. *See CTS Corp. v. Waldburger*, 134 S.Ct. 2175, 2178–79, 2182 (2014). Such limitations period is intended to "put defendants on notice of

9

adverse claims and prevent plaintiffs from sleeping on their rights." *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 352 (1983). After the limitations period has run, defendant's conduct cannot be challenged in the jurisdiction where the statute is applicable. *See id.*; *Kahn v. Kohlberg, Kravis, Roberts & Co.*, 970 F.2d 1030, 1041–42 (2d Cir. 1992); *Seavey v. Chrysler Corp.*, 930 F. Supp. 103, 108–109 (S.D.N.Y. 1996).

Although Section 1983 provides a federal cause of action, the length of the applicable statute of limitations period is determined by state personal injury law. *See Wallace v. Kato*, 549 U.S. 384, 387 (2007); *Owens v. Okure*, 488 U.S. 235, 239, 249–50 (1989) (noting that there is no federal statute of limitations for § 1983 actions). Under New York law, this period is three years from when the plaintiff knows or has reason to know of the injury that is the basis for his claim. *See* N.Y. McKinney's CPLR 214(5); *Vega v. Hempstead Union Free School Dist.*, 801 F.3d 72, 79 (2d Cir. 2015); *Singleton v. City of N.Y.*, 632 F.2d 185, 191 (2d Cir. 1980).

Four federal claims are asserted in the first amended complaint. Three of them accrued in the 24 hour period between plaintiff's arrest on May 10, 2012 and the commencement of the criminal proceeding against him in Bronx County on May 11, 2012: plaintiff's claim for false arrest (which conflates with his claim for false imprisonment), his claim for excessive force (which was allegedly applied when he refused to be fingerprinted at the Bronx Criminal Court on May 10 or 11, 2012), and the badly-pleaded *Monell*-type claim, which reads as a claim for failure to intervene – an impossible claim to assert against the City of New York – but which was apparently intended to be a negligent hiring and training-type *Monell* claim. As chronicled above, the three year statute of limitations, (CPLR 214(5)), ran at the latest on September 7, 2015 (including the 120 day Rule 4(m) period). This was 11 days before the first amended complaint

was filed and a summons was issued, 21 days before the City was served, and 29 days before Detective Fisher was served.

Therefore, in the these claims must be dismissed with prejudice.

*(ii)    Time-Barred State Law Claims in the First Amended Complaint*

The first amended complaint includes a number of claims arising under state law arising out of the events of May 2012. But the analysis is the same. All of those claims are barred by the statute of limitations: intentional infliction of emotional distress (one year, CPLR 215(3)); gross negligence and negligence (three years, CPLR 214(5)); (3) negligent infliction of emotional distress (three years, CPLR 214(5)); (4) assault and battery (one year, CPLR 215(3)); (5) false arrest and false imprisonment (one year, 215(3)); (6) malicious prosecution (one year from termination of criminal proceeding, CPLR 215(3)); and (7) negligent hiring and retention of Fisher (three years, CPLR 214).

Plaintiff's state law claim for abuse of process has been held in this and other districts to be subject to a one year statute of limitations as well, accruing at the time of the initiation of the criminal complaint or arrest. *See Heinfling v. Colapinto*, 946 F. Supp. 260, 266 (S.D.N.Y. 1996); *Duamutef v. Morris*, 956 F. Supp. 1112, 1118 (S.D.N.Y. 1997); *TADCO Const. Corp. v. Dormitory Authority of N.Y.*, 700 F. Supp. 2d 253, 272–73 (E.D.N.Y. 2010); *Anderson v. Cty. of Putnam*, No. 14-CV-7162 (CS), 2016 WL 297737, at *2 (S.D.N.Y. Jan. 22, 2016).

*(iii)    Neither Equitable Tolling Nor Excusable Neglects Saves These Claims*

Plaintiff argues that the failure to file a complaint and to serve the defendants within the statute of limitations constitutes excusable neglect, and notes that the period for service of process can be extended for good cause shown.

11

But Plaintiff is wrong. Only the period for service of process in accordance with Rule 4(m) can be extended for good cause shown. The statute of limitations cannot be extended for good cause; once it has passed, it is an absolute bar to plaintiff's claims. *Compare Seavey v. Chrysler Corp.*, 930 F. Supp. 103, 106 (S.D.N.Y. 1996) (dismissal on a statute of limitations grounds is a judgment on the merits with full *res judicata* effect) *with Zapata v. City of New York*, 502 F.3d 192, 195 (2d Cir. 2007) (dismissal under Rule 4(m) is without prejudice).

Reviving stale claims "that have been allowed to slumber" would inevitably result in unfair surprise and injustice to defendants, and so has been held to be prejudicial without more. *Burnett v. New York Cent. R. Co.*, 380 U.S. 424, 428 (1965); *see also Zapata v. City of New York*, 502 F.3d 192 (2d Cir. 2007). As noted by the courts in this circuit, in cases of undue delay, "failure of service has been held even to nullify the filing of the complaint." *Camotex, S.R.L. v. Hunt*, 741 F. Supp. 1086, 1093 (S.D.N.Y. 1990); *Gleason v. McBride*, 869 F.2d 688, 691 (2d Cir. 1989) (dismissing action where plaintiff waited 44 months to serve defendants).

Nothing described by counsel in response to the motion qualifies as "excusable" neglect. Plaintiff hired his first counsel in this case – Raskin & Kremins – on January 30, 2015, well before the statute of limitations on the federal claims was due to expire (any state law claims other than malicious prosecution were already time-barred, but their federal equivalents were not). Had counsel gone on ECF and looked at the docket sheet for this lawsuit, the failure to serve would have been apparent. There is no acceptable excuse for failing to check the court docket at the outset of a representation when the lawsuit has already been filed – none. That particular form of attorney neglect does not rise to the level of "excusable." *See Ping Chen ex rel. U.S. v. EMSL Analytical, Inc.*, 966 F. Supp. 2d 282, 306 (S.D.N.Y. 2013) (ruling that

12

attorney's neglect or mistake does not constitute good cause to excuse plaintiff's failure to timely effect service; only exceptional circumstances beyond the plaintiff's control will do).

Similarly, the failure of the Ebanks & Sattler to ascertain when (or in this case, whether) the summons and complaint had been served cannot be deemed excusable neglect. The fact that the firm was busy working on other matters – as claimed in the opposition brief (*see* Mem. in Opp'n Mot. Dismiss, at 9, Docket No. 41) – certainly does not render this failure excusable. Neither would any purported delay in receiving former counsel's file qualify as excusable neglect. Anyone can go online and check the public docket; nothing more was required to ascertain the critically important fact that no summons had issued and no defendant had been served. If Ebanks & Sattler would have taken that simple step when it was retained by Plaintiff in May 2015, it would have had plenty of time to serve the City and Fisher with process before the statute of limitations ran – thanks to the 120 day toll of the statute that was afforded to plaintiff when he filed a timely complaint!

In short, Plaintiff may have some interesting claims for malpractice against his lawyers. But he has lost, irretrievably, his Section 1983 claims for false arrest and excessive force against Fisher relating to the May 2012 arrest – as well as the corresponding *Monell* negligent hiring/failure to intervene claim against the City – by not bringing them in time.

There is also no basis on which to conclude that equitable tolling applies here to extend the statute of limitations beyond its expiration date.

Equitable tolling protects litigants who are incapable of looking out for their affairs, but the standard for invoking the toll is very high indeed. The doctrine applies "only in rare and exceptional circumstances," where a plaintiff "has been prevented in some extraordinary way from exercising his rights." *Francis*, 372 F. Supp. 2d at 747. For example, in *Lloret v. Lockwood*

*Greene Eng'rs, Inc.,* No. 97 Civ. 5750(SS), 1998 WL 142326, at \*2, \*4 (S.D.N.Y. Mar. 27, 1998), the court refused to apply the doctrine of equitable tolling even though the plaintiff claimed that his depression prevented him from exercising his legal rights. Acknowledging that mental illness might be a basis for equitable tolling under exceptional circumstances, the court nonetheless ruled that the plaintiff failed to show how his depression "so affected [him] that he was unable to take care of his legal affairs." *Id.*; *see also Mahoney v. Beacon City School Dist.*, 988 F. Supp. 395, 399 (S.D.N.Y. 1997).

Plaintiff's incarceration does not equitably toll the statute of limitations. *See Buczek v. Cotter*, 14-CV-1024S, 2015 WL 9413885, at \*2–\*3 (W.D.N.Y. 2015). Like many prisoners, Plaintiff timely filed his lawsuit during the period while he was imprisoned. What he did not do was serve the defendants with process. Ignorance or lack of sophistication is no excuse; all *pro se* litigants are bound to educate themselves about the steps they need to go through to commence a lawsuit and give appropriate notice of that lawsuit to defendants. *See Pearson v. Walden University*, 144 F. Supp. 3d 503, 508 (S.D.N.Y. 2015) (noting that *pro se* litigants must still comply with relevant rules of procedural and substantive law).

Of course, Plaintiff was released from prison before the service packet sent by this court reached him there, and prison officials do not forward mail. But once Plaintiff was free, he could and should have come down to the courthouse or otherwise contacted the court to check on the status of his case. Had he done so, he would have learned that no defendant had been served, and he could have obtained a service packet and made the necessary arrangements with the U.S. Marshals Service. Plaintiff, like every litigant, was also obligated to notify the court that his address had changed; he did not do that either.

14

There can be no suggestion that Gomez was incapable of coming down to court in order to look into the progress of his lawsuit, or that he was incapable of sending the court information about where he could be reached. To the contrary, the record indicates that Plaintiff was quite capable of looking after his affairs; he spent the weeks immediately following his release looking for a lawyer to represent him. Plaintiff's decision to look for a lawyer is perfectly rational, but it does not excuse his failure to take the critically important step of serving the summons and complaint on the defendants, and it absolutely disproves his entitlement to equitable tolling.

Finally, once Plaintiff obtained legal representation, any suggestion that the statute of limitations might be equitably tolled evaporated.

Therefore, all of plaintiff's federal claims except his claim for malicious prosecution arising out of his May 10 arrest, and all of the state law claims asserted in the amended complaint, are dismissed with prejudice.

### *(iv)* *The Federal Malicious Prosecution Claim Fails to State a Claim*

This leaves the federal claim for malicious prosecution arising out of the May 10 arrest and the May 11 criminal complaint. That claim accrued on the day that charges against plaintiff were formally dismissed – which was September 11, 2014. *Palmer v. City of New York*, 315 F. App'x 350 (2d Cir. 2009). Like all Section 1983 claims, the statute of limitations is three years (two years longer than New York State's statute for intentional torts, of which malicious prosecution is one). Thus, this federal claim – unlike the corresponding state law malicious prosecution claim – cannot be dismissed on statute of limitations grounds.

However, on the facts pleaded, the malicious prosecution claim against Fisher must be dismissed, because there was indubitably probable cause for Fisher (or any police officer) to arrest Gomez on May 10, 2010. As alleged in Gomez's own pleading, he was subject to an order

15

of protection – two of them, actually – which required him to stay away from Caba and her place of residence. (Decl. of Lucienne Pierre, Ex. I, II). He was arrested coming out of her place of residence. (Am. Compl. ¶ 20, at 6, Docket No. 15). That means there was probable cause to arrest him for violating the orders of protection. *Morales v. City of New York*, 209 F. App'x 75, 76 (2d Cir. 2006). Probable cause to arrest is an absolute defense to a claim of malicious prosecution, under federal or state law. *Mangianello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir. 2010) ("[T]he existence of probable cause is a complete defense to a claim of malicious prosecution in New York.") (quoting *Savino v. City of New York*, 331 F.3d 63, 72 (2d Cir. 2003)).

Plaintiff's many allegations about Fisher's motives, his bias against Gomez and his purported relationship with Caba do not change the fact that (1) plaintiff was subject to order of protection, and (2) by his own admission, contained in his own pleading, plaintiff was in a place from which the order of protection barred him. This gave rise to probable cause to arrest him, and that is the end of the story where the federal malicious prosecution claim for the May 10, 2012 arrest is concerned.[2]

For these reasons, the first amended complaint is dismissed in its entirety.

## III.  The Motion for Leave to Amend and the Second Amended Complaint

Plaintiff attempted to serve a second amended complaint without permission on April 1, 2016. When his error was pointed out to counsel, a motion for leave to file followed. The proposed second amended complaint contains all of the allegations of the first amended complaint, and three additional claims: one for false arrest under federal law, one for malicious

---

[2] Were it not time-barred by virtue of its one year statute of limitations, the malicious prosecution claim under state law would likewise be dismissed for failure to state a claim.

prosecution under federal law, and one for abuse of process under state law arising out of his November 13, 2012 arrest.

Although Fed. R. Civ. P. 15 mandates the courts to freely give leave to amend when justice so requires, a court may deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party. *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). The claims that were originally asserted in the first amended complaint, all of which relate to the May 2012 arrest and subsequent prosecution, have been dismissed with prejudice; they cannot be resurrected in a new pleading filed even later than the first amended complaint. It would, therefore, be futile to permit Plaintiff to file the second amended complaint to the extent of asserting those claims, both state and federal.

Plaintiff's motion to be allowed to assert a new federal claim for false arrest, this one arising out of his November 2012 arrest, is also denied because amendment would be futile. The statute of limitations on that claim ran three years after it accrued – which is to say, on November 13, 2015. Plaintiff made no effort to assert such a claim until April 2016 – almost five months after the limitations period expired. Because plaintiff did not file a pleading alleging this claim within the limitations period – indeed, because Gomez (or his counsel) expressly disclaimed the assertion of any such claim in the first amended complaint – he gets no *Toliver* extension of the statute of limitations, because nothing was tolled under Rule 4(m). As explained above, that toll only applies when the statute still has time left to run; it cannot be relied on to resurrect an already time-barred claim.

Ironically, plaintiff's express disclaimer, in the amended complaint, of any claim arising out of his November 13, 2012 arrest was a terrible mistake; the new false arrest claim would have been timely if it had been asserted in that pleading. But it was not. Plaintiff is the master of

17

his complaint; the court will not second guess the decision not to plead the claim when the complaint was first amended last fall.

Plaintiff's motion to be allowed to plead a new state claim for abuse of process arising out of his November 13, 2012 arrest is also denied as futile. As discussed above, courts in this district have held that a "a claim for abuse of process accrues at such time as the criminal process is set in motion – typically at arrest – against the plaintiff." *Duamutef v. Morris*, 956 F. Supp. 1112, 1118 (S.D.N.Y. 1997). The statute of limitations on Plaintiff's proposed state abuse of process claim thus ran on November 13, 2013, long before Plaintiff filed his original and first amended complaints.

This leaves plaintiff's newly asserted federal claim for malicious prosecution arising out of the November 2012 arrest.[3]

Pursuant to Fed. R. Civ. P. 15(c), the original pleading must give the defendant an adequate notice of the matters raised in the amended pleading and must do so *within the statute of limitations period. See Stevelman v. Alias Research Inc.*, 174 F.3d 79, 86 (2d Cir. 1999). In this case, the first amended complaint -- while expressly disclaiming any intent to plead a cause of action arising out of the November arrest and prosecution -- pleaded facts that might give rise to a timely claim for malicious prosecution arising out of his November 2012 arrest and the subsequent criminal court proceedings, and did so within three years after any such claim would have accrued (which occurred on September 11, 2014). Therefore, it would not be futile for plaintiff to assert such a Section 1983 claim in an amended pleading.

---

[3] Because the statute of limitations on a state law malicious prosecution claim is one year, not three years, any corresponding state law malicious prosecution claim was time barred one year after the criminal proceeding ended – or on September 11, 2015. Therefore, it would be futile to allow plaintiff to amend his complaint to assert such a claim.

18

The record (which is to say, the complaint) does not reveal any details about why Gomez was arrested for violating the orders of protection in November 2012 – in stark contrast to his earlier arrest, which admittedly occurred as he was leaving his ex-wife's home, from which he was barred by court order. As a result, I cannot say that it would be futile to allow plaintiff to amend his pleading to assert his federal malicious prosecution claim on the ground that there was no probable cause to arrest plaintiff on that date. I also cannot find futility on the ground of qualified immunity until the reasons for the arrest are made clear – especially in light of plaintiff's allegations about Fisher's improper motive and behavior, all of which are evidence of malice, and which I must assume to be true for purposes of this motion.

I note that, while the §1983 malicious prosecution claim is not time-barred, any corresponding *Monell* claim is time-barred, and so cannot be pleaded. That is because the *Monell* claim against the City accrued on the date when Fisher swore out the allegedly false criminal complaint against Gomez, on November 13, 2012.

Fisher, who is the only remaining defendant on the only remaining claim, argues prejudice; but there is no prejudice in the assertion of a claim that is not barred by the statute of limitations. Fisher was served with process within the statute of limitations for a federal malicious prosecution claim arising out of the November 2012 arrest. Were I to deny the motion for leave to amend, he could be served again tomorrow with a new lawsuit alleging this particular malicious prosecution claim. Fisher's prejudice argument thus rings hollow.

So I see no way around granting the motion for leave to file a second amended complaint – albeit a complaint limited to alleging malicious prosecution claim against Fisher arising out of the November 13, 2012 arrest. I rather imagine that Corporation Counsel can put together a

19

summary judgment motion addressing the issue of whether probable cause to arrest existed on November 13, 2012, but until it does, this one federal claim must be allowed to proceed.

For the foregoing reasons, Plaintiff's first amended complaint is dismissed with prejudice. The Clerk of the Court is directed to close the file 14-CV-05932.

Dated: September 14, 2016

*Colleen McMahon*

U.S.D.J.

BY ECF TO ALL COUNSEL